Daniel Srourian, Esq. (SBN 285678)
SROURIAN LAW FIRM, P.C.
468 N. Camden Dr. Suite 200
Beverly Hills, CA 90210
Telephone: (213) 474-3800
Facsimile: (213) 471-4160
Email: daniel@slfla.com

*Attorneys for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK J. ERITE on behalf of themselves and all others similarly situated,<br><br>                Plaintiff,<br><br>vs.<br><br>INGRAM MICRO INC.,<br><br>                Defendant. | **Case No.:**<br><br>**COMPLAINT** |

Plaintiff, Frank J. Erite ("Plaintiff"), individually and on behalf of the Class defined below of similarly situated persons, allege the following against Ingram Micro Inc. ("Defendant" or "Ingram"), based upon personal knowledge with respect to themselves and on information and belief derived from, among other things, investigation by counsel as to all other matters:

## SUMMARY OF THE CASE

1.      This action arises from Defendant's failure to secure the personally identifiable information ("PII")[1] of Plaintiff and the members of the proposed Class.

2.      Ingram is a technology partner giving businesses of all sizes a financial advantage by providing a B2B platform with a massive global network and game-changing expertise and services.[2]

---

[1] The Federal Trade Commission defines "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number." 17 C.F.R. § 248.201(b)(8).

[2] https://www.ingrammicro.com/en-us/company/about-us

3.     On or around July 3, 2025, Ingram detected a cybersecurity incident involving some of their internal systems. Ingram determined that between July 2 and 3, 2025, an unauthorized third party took certain files from some of their internal file repositories, which contained the PII of individuals that was being stored on Ingram's systems (the "Data Breach").[3]

4.     The PII intruders accessed and infiltrated from Defendant's systems included individuals' name, contact information, date of birth, government-issued identification numbers, social security, driver's license, passport numbers, and certain employment-related information such as work-related evaluations.[4]

5.     As a result of the Data Breach, which Defendant failed to prevent, the Private Information of individuals including Plaintiff (and Class Members) was stolen.[5]

6.     Instead, Defendant disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, and/or negligently failing to implement reasonable measures to safeguard Private Information and by failing to take necessary steps to prevent unauthorized disclosure of that information. Defendant's woefully inadequate data security measures made the Data Breach a foreseeable, and even likely, consequence of its negligence.

7.     As a direct and proximate result of the Data Breach, Plaintiff and Class Members have suffered actual and present injuries, including but not limited to: (a) present, certainly impending, and continuing threats of identity theft crimes, fraud, scams, and other misuses of their Private Information; (b) diminution of value of their Private Information; (c) loss of benefit of the bargain (price premium damages); (d) loss of value of privacy and confidentiality of the stolen Private Information; (e) illegal sales of the compromised Private Information; (f) mitigation expenses and time spent responding to and remedying the effects of the Data Breach; (g) identity theft insurance

---

[3] *Notice of Data Breach*
[4] *Id.*
[5] *See* the "Notice Letter". https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/0675e1b9-a308-4b90-be71-458afcc6f542.html

CLASS ACTION COMPLAINT
2

costs; (h) "out of pocket" costs incurred due to actual identity theft; (i) credit freezes/unfreezes; (j) expense and time spent on initiating fraud alerts and contacting third parties; (k) decreased credit scores; (l) lost work time; and (m) anxiety, annoyance, and nuisance; (n) continued risk to their Private Information, which remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' Private Information.

8.     Plaintiff and Class Members are unaware of how Defendant obtained their valuable Private Information and unaware that Defendant would make their Private Information Internet-accessible, not encrypt personal and sensitive data elements and not delete the Private Information it no longer had reason to maintain.

9.     Through this lawsuit, Plaintiff seeks to hold Defendant responsible for the injuries they inflicted on Plaintiff and Class Members due to their impermissibly inadequate data security measures, and to seek injunctive relief to ensure the implementation of security measures to protect the Private Information that remains in Defendant's possession.

10.    The exposure of one's Private Information to cybercriminals is a bell that cannot be un-rung. Before this Data Breach, Plaintiff and the Class's Private Information was exactly that—private. Not anymore. Now, their Private Information is forever exposed and unsecure.

## JURISDICTION AND VENUE

11.    The Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Upon information and belief, the number of Class Members numbers in the thousands, many of whom (including Plaintiff) have different citizenship from Defendant. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

12.     The Court has general personal jurisdiction over Defendant because Defendant's headquarters and principal place of business is located at 3351 Michelson Drive, Suite 100, Irvine, CA 92612-0697.

13.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because it is the District within which Defendant has the most significant contacts.

## PARTIES

14.     Plaintiff Frank J. Erite is a resident and citizen of Illinois, where he intends to remain.

15.     Defendant is a California corporation with its headquarters and principal place of business located at 3351 Michelson Drive, Suite 100, Irvine, CA 92612-0697.

## FACTUAL ALLEGATIONS

### A. The Data Breach

16.     Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive information it was maintaining for Plaintiff and Class Members, such as encrypting the information or purging it when it is no longer needed, causing the exposure of Private Information.

17.     As evidenced by the Data Breach, the Private Information contained in Defendant's network and was not encrypted. Had the information been properly encrypted, the data thieves would have exfiltrated only unintelligible data.

18.     Defendant admits it detected suspicious activity on its systems on July 3, 2025, but waited until January 16, 2026 to inform members of the public that their Private Information may have been affected.[6]

### B. The Value of Private Information

19.     In April 2020, ZDNet reported in an article titled "Ransomware mentioned in 1,000+ SEC filings over the past year", that "[r]ansomware gangs are now ferociously aggressive in their pursuit of big companies. They breach networks, use specialized

---

[6] *See* Notice of Data Breach

CLASS ACTION COMPLAINT
4

tools to maximize damage, leak corporate information on dark web portals, and even tip journalists to generate negative news for complaints as revenge against those who refuse to pay."[7]

20.    In September 2020, the United States Cybersecurity and Infrastructure Security Agency published online a "Ransomware Guide" advising that "[m]alicious actors have adjusted their ransomware tactics over time to include pressuring victims for payment by threatening to release stolen data if they refuse to pay and publicly naming and shaming victims as secondary forms of extortion."[8]

21.    Stolen Private Information is often trafficked on the dark web, as is the case here. Law enforcement has difficulty policing the dark web due to this encryption, which allows users and criminals to conceal identities and online activity.

22.    When malicious actors infiltrate companies and copy and exfiltrate the Private Information that those companies store, that stolen information often ends up on the dark web because the malicious actors buy and sell that information for profit.[9]

23.    Another example is when the U.S. Department of Justice announced its seizure of AlphaBay in 2017, AlphaBay had more than 350,000 listings, many of which concerned stolen or fraudulent documents that could be used to assume another person's identity. Other marketplaces, similar to the now-defunct AlphaBay, "are awash with [Private Information] belonging to victims from countries all over the world. One of the key challenges of protecting Private Information online is its pervasiveness. As data breaches in the news continue to show, Private Information about employees, customers and the public is housed in all kinds of organizations, and the increasing digital transformation of today's businesses only broadens the number of potential sources for

---

[7]    https://www.zdnet.com/article/ransomware-mentioned-in-1000-sec-filings-over-the-past-year/ (last visited September 11, 2024).
[8]    *See* https://www.cisa.gov/sites/default/files/2023-01-CISA_MSISAC_Ransomware%20Guide_8508C.pdf (last visited September 11, 2024).
[9]    *Shining a Light on the Dark Web with Identity Monitoring, IdentityForce*, Dec. 28, 2020, https://www.identityforce.com/blog/shining-light-dark-web-identity-monitoring    (last    visited September 11, 2024).

hackers to target."[10]

24.    The Private Information of consumers remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, Private Information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $2009.[11] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[12] Criminals can also purchase access to entire company data breaches.[13]

25.    Once Private Information is sold, it is often used to gain access to various areas of the victim's digital life, including bank accounts, social media, credit card, and tax details. This can lead to additional Private Information being harvested from the victim, as well as Private Information from family, friends and colleagues of the original victim.

26.    According to the FBI's Internet Crime Complaint Center (IC3) 2019 Internet Crime Report, Internet-enabled crimes reached their highest number of complaints and dollar losses in 2019, resulting in more than $3.5 billion in losses to individuals and business victims.

27.    Victims of identity theft also often suffer embarrassment, blackmail, or harassment in person or online, and/or experience financial losses resulting from fraudulently opened accounts or misuse of existing accounts.

28.    Data breaches facilitate identity theft as hackers obtain consumers' Private

---

[10] *Stolen PII & Ramifications: Identity Theft and Fraud on the Dark Web*, Armor, April 3, 2018, https://www.armor.com/resources/blog/stolen-pii- ramifications- identity-theft-fraud-dark-web/ (last visited September 11, 2024).
[11] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, https://www.digitaltrends.com/computing/personal- data-sold-on-the-dark-web- how-much-it-costs/ (last visited September 11, 2024).
[12] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last visited September 11, 2024).
[13] *In the Dark*, VPNOverview, 2019, https://vpnoverview.com/privacy/anonymous- browsing/in-the-dark/ (last visited September 11, 2024).

1   Information and thereafter use it to siphon money from current accounts, open new
2   accounts in the names of their victims, or sell consumers' Private Information to others
3   who do the same.

4       29.    For example, the United States Government Accountability Office noted
5   in a June 2007 report on data breaches (the "GAO Report") that criminals use Private
6   Information to open financial accounts, receive government benefits, and make
7   purchases and secure credit in a victim's name.[14] The GAO Report further notes that
8   this type of identity fraud is the most harmful because it may take some time for a victim
9   to become aware of the fraud, and can adversely impact the victim's credit rating in the
10  meantime. The GAO Report also states that identity theft victims will face "substantial
11  costs and inconveniences repairing damage to their credit records . . . [and their] good
12  name."[15]

13      30.    The market for Private Information has continued unabated to the present,
14  and in 2023 the number of reported data breaches in the United States increased by 78%
15  over 2022, reaching 3205 data breaches.[16]

16      31.    The exposure of Plaintiff's and Class Members' Private Information to
17  cybercriminals will continue to cause substantial risk of future harm (including identity
18  theft) that is continuing and imminent in light of the many different avenues of fraud
19  and identity theft utilized by third-party cybercriminals to profit off of this highly
20  sensitive information.

21  **C. Defendant Failed to Comply with Regulatory Requirements and Standards.**

22      32.    Federal and state regulators have established security standards and issued

23

---

24  [14] *See* Government Accountability Office, *Personal Information: Data Breaches are Frequent, but Evidence of Resulting Identity Theft is Limited; However, the Full Extent is Unknown* (June 2007),
25  https://www.gao.gov/assets/gao- 07-737.pdf (last visited September 11, 2024).
    [15] *Id.*
26  [16] Beth Maundrill, *Data Privacy Week: US Data Breaches Surge, 2023 Sees 78% Increase in Compromises*, INFOSECURITY MAGAZINE (Jan. 23, 2024); https://www.infosecurity-
27  magazine.com/news/us-data-breaches-surge-2023/ (last visited September 11, 2024); *see also* Identity Theft Resource Center, *2023 Data Breach Report*, https://www.idtheftcenter.org/publication/ 2023-
28  data-breach-report/ (last visited September 11, 2024).

recommendations to temper data breaches and the resulting harm to consumers and employees. There are a number of state and federal laws, requirements, and industry standards governing the protection of Private Information.

33.    For example, at least 24 states have enacted laws addressing data security practices that require businesses that own, license, or maintain Private Information about a resident of that state to implement and maintain "reasonable security procedures and practices" and to protect Private Information from unauthorized access.

34.    Additionally, cybersecurity firms have promulgated a series of best practices that at a minimum should be implemented by sector participants including, but not limited to: installing appropriate malware detection software; monitoring and limiting network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protecting of physical security systems; protecting against any possible communication system; and training staff regarding critical points.[17]

35.    The FTC has issued several guides for businesses, highlighting the importance of reasonable data security practices. According to the FTC, the need for data security should be considered for all business decision-making.[18]

36.    Under the FTC's 2016 *Protecting Personal Information: Guide for Business* publication, the FTC notes that businesses should safeguard the personal customer information they retain; properly dispose of unnecessary personal information; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to rectify security issues.[19]

37.    The guidelines also suggest that businesses use an intrusion detection

---

[17] *See Addressing BPO Information Security: A Three-Front Approach*, DATAMARK, INC. (Nov. 2016), https://insights.datamark.net/addressing-bpo-information-security (last visited September 11, 2024).

[18] *Start With Security*, Fed. Trade Comm'n ("FTC"), https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last visited September 11, 2024).

[19] *Protecting Personal Information: A Guide for Business*, FTC, https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last visited September 11, 2024).

CLASS ACTION COMPLAINT
8

system to expose a breach as soon as it happens, monitor all incoming traffic for activity indicating someone is trying to hack the system, watch for large amounts of data being siphoned from the system, and have a response plan in the event of a breach.

38.     The FTC advises companies to not keep information for periods of time longer than needed to authorize a transaction, restrict access to Private Information, mandate complex passwords to be used on networks, utilize industry-standard methods for security, monitor for suspicious activity on the network, and verify that third-party service providers have implemented reasonable security measures.[20]

39.     The FTC has brought enforcement actions against companies for failing to adequately and reasonably protect consumer data, treating the failure to do so as an unfair act or practice barred by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders originating from these actions further elucidate the measures businesses must take to satisfy their data security obligations.

40.     Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

41.     Defendant's failure to verify that it had implemented reasonable security measures constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

**D. Defendant Failed to Comply with Industry Practices.**

42.     Various cybersecurity industry best practices have been published and should be consulted as a go-to resource when developing an organization's cybersecurity standards. The Center for Internet Security ("CIS") promulgated its Critical Security Controls, which identify the most commonplace and essential cyber-attacks that affect businesses every day and proposes solutions to defend against those

---

[20] *Id.*

cyber-attacks.[21] All organizations collecting and handling Private Information, such as Defendant, are strongly encouraged to follow these controls.

43.     Further, the CIS Benchmarks are the overwhelming option of choice for auditors worldwide when advising organizations on the adoption of a secure build standard for any governance and security initiative, including PCI DSS, NIST 800-53, SOX, FISMA, ISO/IEC 27002, Graham Leach Bliley and ITIL.[22]

44.     Several best practices have been identified that a minimum should be implemented by data management companies like Defendant, including but not limited to securely configuring business software, managing access controls and vulnerabilities to networks, systems, and software, maintaining network infrastructure, defending networks, adopting data encryption while data is both in transit and at rest, and securing application software.[23]

45.     Defendant failed to follow these and other industry standards to adequately protect the Private Information of Plaintiff and Class Members.

**E. The Data Breach Caused Injury to Class Members and Will Result in Additional Harm Such as Fraud.**

46.     Without detailed disclosure to the victims of the Data Breach, individuals whose Private Information was compromised by the Data Breach, including Plaintiff and Class Members, were unknowingly and unwittingly exposed to continued misuse and ongoing risk of misuse of their Private Information for months without being able to take available precautions to prevent imminent harm.

47.     The ramifications of Defendant's failure to secure Plaintiff's and Class Members' data are severe.

48.     Victims of data breaches are much more likely to become victims of

---

[21]     Center for Internet Security, *Critical Security Controls*, at 1 (May 2021), https://learn.cisecurity.org/CIS-Controls-v8-guide-pdf (last visited September 11, 2024).

[22]     *See CIS Benchmarks FAQ*, Center for Internet Security, https://www.cisecurity.org/cis-benchmarks/cis-benchmarks-faq/ (last visited September 11, 2024).

[23]     *See* Center for Internet Security, *Critical Security Controls* (May 2021), https://learn.cisecurity.org/CIS-Controls-v8-guide-pdf (last visited September 11, 2024).

CLASS ACTION COMPLAINT
10

identity theft and other types of fraudulent schemes. This conclusion is based on an analysis of four years of data that correlated each year's data breach victims with those who also reported being victims of identity fraud.

49.    The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[24] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person."[25]

50.    Identity thieves can use Private Information, such as that of Plaintiff and Class Members, which Defendant failed to keep secure, to perpetrate a variety of crimes that harm victims. For instance, identity thieves may commit various types of government fraud such as: immigration fraud; obtaining a driver's license or identification card in the victim's name but with another's picture; using the victim's information to obtain government benefits; or filing a fraudulent tax return using the victim's information to obtain a fraudulent refund.

51.    As demonstrated herein, these and other instances of fraudulent misuse of the compromised Private Information has already occurred and are likely to continue.

52.    As a result of Defendant's delay between the Data Breach in July 2025 and the notice of the Data Breach sent to affected persons in January 2026, the risk of fraud for Plaintiff and Class Members increased exponentially.

53.    Reimbursing a consumer for a financial loss due to fraud does not make that individual whole again. On the contrary, identity theft victims must spend numerous hours and their own money repairing the impact to their credit. After conducting a study, the Department of Justice's Bureau of Justice Statistics ("BJS") found that identity theft victims "reported spending an average of about 7 hours clearing up the issues" and resolving the consequences of fraud in 2014.[26]

---

[24] 17 C.F.R. § 248.201 (2013).
[25] Id.
[26] *Victims of Identity Theft*, Bureau of Justice Statistics (Sept. 2015) http://www.bjs.gov/content/pub/pdf/vit14.pdf (last visited September 11, 2024).

54.     The 2017 Identity Theft Resource Center survey[27] evidences the emotional suffering experienced by victims of identity theft:

- 75% of respondents reported feeling severely distressed;

- 67% reported anxiety;

- 66% reported feelings of fear related to personal financial safety;

- 37% reported fearing for the financial safety of family members;

- 24% reported fear for their physical safety;

- 15.2% reported a relationship ended or was severely and negatively impacted by identity theft; and

- 7% reported feeling suicidal.

55.     Identity theft can also exact a physical toll on its victims. The same survey reported that respondents experienced physical symptoms stemming from their experience with identity theft:

- 48.3% of respondents reported sleep disturbances;

- 37.1% reported an inability to concentrate / lack of focus;

- 28.7% reported they were unable to go to work because of physical symptoms;

- 23.1% reported new physical illnesses (aches and pains, heart palpitations, sweating, stomach issues); and

- 12.6% reported a start or relapse into unhealthy or addictive behaviors.[28]

56.     There may be a time lag between when harm occurs versus when it is discovered, and also between when Private Information is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft.

[27] *Id.*
[28] *Id.*

CLASS ACTION COMPLAINT

12

1    Further, once stolen data have been sold or posted on the Web, fraudulent

2    use of that information may continue for years. As a result, studies that

3    attempt to measure the harm resulting from data breaches cannot

4    necessarily rule out all future harm.[29]

5    **F. Plaintiff and Class Members Suffered Damages.**

6    57.    As a direct and proximate result of Defendant's wrongful actions and

7    inaction and the resulting Data Breach, Plaintiff and Class Members have already been

8    harmed by the fraudulent misuse of their Private Information, and have been placed at

9    an imminent, immediate, and continuing increased risk of additional harm from identity

10   theft and identity fraud, requiring them to take the time which they otherwise would

11   have dedicated to other life demands such as work and family in an effort to mitigate

12   both the actual and potential impact of the Data Breach on their lives. Such mitigatory

13   actions include, *inter alia*, placing "freezes" and "alerts" with credit reporting agencies,

14   contacting their financial institutions, closing or modifying financial accounts, closely

15   reviewing and monitoring their credit reports and accounts for unauthorized activity,

16   sorting through dozens of phishing and spam email, text, and phone communications,

17   and filing police reports. This time has been lost forever and cannot be recaptured.

18   58.    Defendant's wrongful actions and inaction directly and proximately

19   caused the theft and dissemination into the public domain of Plaintiff's and Class

20   Members' Private Information, causing them to suffer, and continue to suffer, economic

21   damages and other actual harm for which they are entitled to compensation, including:

22       a.  theft and misuse of their personal and financial information;

23       b.  the imminent and certainly impending injury flowing from potential fraud

24           and identity theft posed by their Private Information being placed in the

25           hands of criminals and misused via the sale of Plaintiff's and Class

26           Members' information on the Internet's black market;

27

28   [29]    GAO, *Report to Congressional Requesters*, at 29 (June 2007),
http://www.gao.gov/new.items/d07737.pdf (last visited September 11, 2024).

      c.  the untimely and inadequate notification of the Data Breach;

      d.  the improper disclosure of their Private Information;

      e.  loss of privacy;

      f.  ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach;

      g.  ascertainable losses in the form of deprivation of the value of their Private Information, for which there is a well-established national and international market;

      h.  the loss of productivity and value of their time spent to address, attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach, including finding fraudulent charges, cancelling and reissuing cards, purchasing credit monitoring and identity theft protection services, imposition of withdrawal and purchase limits on compromised accounts, and the inconvenience, nuisance and annoyance of dealing with all such issues resulting from the Data Breach; and

      i.  nominal damages.

59. While Plaintiff's and Class Members' Private Information has been stolen, Defendant continues to hold Plaintiff's and Class Members' Private Information. Particularly because Defendant has demonstrated an inability to prevent a breach or stop it from continuing even after being detected, Plaintiff and Class Members have an undeniable interest in ensuring that their Private Information is secure, remains secure, is properly and promptly destroyed, and is not subject to further theft.

**G. Plaintiff Frank J. Erite Experience**

60. At the time of the Data Breach, Plaintiff's Private Information, including his name, contact information, date of birth, government-issued identification numbers, social security, driver's license, passport numbers, and certain employment-related

information such as work-related evaluations, was stored on Defendant's systems and Plaintiff is unaware of how Defendant obtained this information.

61.    Plaintiff received a Notice of Security Incident from Defendant dated January 16, 2026. He did not recognize the name "Ingram Micro, Inc." and did not know how or why Defendant had his Private Information stored on its systems.

62.    Since the Data Breach, Plaintiff has experienced anxiety and increased concerns for the loss of his privacy, as well as anxiety over the impact of cybercriminals accessing and using his Private Information.

63.    Plaintiff has a continuing interest in ensuring that his Private Information, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

64.    Plaintiff  is very careful about sharing sensitive Private Information. He stores documents containing Private Information in safe and secure locations and has never knowingly transmitted unencrypted sensitive Private Information over the Internet or any other unsecured source. Plaintiff would not have entrusted his Private Information to Defendant had he known of Defendant's lax data security policies.

65.    As a direct and proximate result of the Data Breach, Plaintiff has made reasonable efforts to mitigate the impact of the Data Breach, including by regularly and closely monitoring his financial accounts.

66.    As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address the harms caused by the Data Breach. As a result of the Data Breach, he has faced and faces a present and continuing risk of fraud and identity theft for his lifetime.

## CLASS ALLEGATIONS

67.    Plaintiff brings this class action individually on behalf of himself and all members of the following Class of similarly situated persons pursuant to Federal Rule of Civil Procedure 23. Plaintiff seeks certification under Fed. R. Civ. P. 23(a), (b)(2),

and (b)(3) of the following Nationwide Class:

> All persons residing in the United States whose Private Information was compromised in the Data Breach, including all who were sent a notice of the Data Breach.

68.     Excluded from the Class are Defendant and its affiliates, parents, subsidiaries, officers, agents, and directors, any entities in which Defendant has a controlling interest, as well as the judge(s) presiding over this matter and the clerks, judicial staff, and immediate family members of said judge(s).

69.     Plaintiff reserves the right to modify or amend the foregoing Class definitions before the Court determines whether certification is appropriate.

70.     <u>Numerosity:</u> The members in the Class are so numerous that joinder of all Class Members in a single proceeding would be impracticable.

71.     <u>Commonality and Predominance:</u> Common questions of law and fact exist as to all Class Members and predominate over any potential questions affecting only individual Class Members. These common questions of law or fact include, *inter alia*:

a.     Whether Defendant engaged in the conduct alleged herein;

b.     Whether Defendant had a duty to implement and maintain reasonable security procedures and practices to protect and secure Plaintiff's and Class Members' Private Information from unauthorized access and disclosure;

c.     Whether Defendant's computer systems and data security practices used to protect Plaintiff's and Class Members' Private Information violated the FTC Act and/or state laws, and/or Defendant's other duties discussed herein;

d.     Whether Defendant failed to adequately respond to the Data Breach, including failing to investigate it diligently and notify affected individuals in the most expedient time possible and without unreasonable delay, and whether this caused damages to Plaintiff

CLASS ACTION COMPLAINT

16

1    and Class Members;

2    e.    Whether Defendant unlawfully shared, lost, or disclosed Plaintiff's

3    and Class Members' Private Information;

4    f.    Whether Defendant's data security systems prior to and during the

5    Data Breach complied with applicable data security laws and

6    regulations;

7    g.    Whether Defendant's data security systems prior to and during the

8    Data Breach were consistent with industry standards;

9    h.    Whether Plaintiff and Class Members suffered injury as a proximate

10    result of Defendant's negligent actions or failures to act;

11    i.    Whether Defendant failed to exercise reasonable care to secure and

12    safeguard Plaintiff's and Class Members' Private Information;

13    j.    Whether Defendant breached duties to protect Plaintiff's and Class

14    Members' Private Information;

15    k.    Whether Defendant's actions and inactions alleged herein were

16    negligent;

17    l.    Whether Defendant was unjustly enriched by their conduct as

18    alleged herein;

19    m.    Whether Plaintiff and Class Members are entitled to additional

20    credit or identity monitoring and monetary relief; and

21    n.    Whether Plaintiff and Class Members are entitled to equitable relief,

22    including injunctive relief, restitution, disgorgement, and/or the

23    establishment of a constructive trust.

24    72.    Defendant engaged in a common course of conduct giving rise to the legal

25    rights sought to be enforced by Plaintiff on behalf of himself and all other Class

26    Members. Individual questions, if any, pale in comparison, in both quantity and quality,

27    to the numerous common questions that dominate this action.

28

73.    <u>Typicality:</u> Plaintiff's claims are typical of the claims of the Class. Plaintiff, like all proposed members of the Class, had their Private Information compromised in the Data Breach. Plaintiff and Class Members were injured by the same wrongful acts, practices, and omissions committed by Defendant, as described herein. Plaintiff's claims therefore arise from the same practices or course of conduct that give rise to the claims of all Class Members.

74.    <u>Adequacy:</u> Plaintiff will fairly and adequately protect the interests of the Class Members. Plaintiff is an adequate representative of the Class and have no interests adverse to, or conflict with, the Class they seek to represent. Plaintiff  has retained counsel with substantial experience and success in the prosecution of complex consumer protection class actions of this nature.

75.    <u>Superiority:</u> A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages and other financial detriment suffered by Plaintiff and all other Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class Members to individually seek redress from Defendant's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

76.    <u>Injunctive and Declaratory Relief:</u> Defendant has acted and/or refused to act on grounds generally applicable to the Class such that final injunctive relief and/or corresponding declaratory relief is appropriate as to the Class as a whole.

77.    Likewise, particular issues are appropriate for certification under Rule

24(c)(4) because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such issues include, but are not limited to: (a) whether Defendant owed a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, and safeguarding their Private Information; (b) whether Defendant failed to adequately monitor and audit their data security systems; and (c) whether Defendant failed to take reasonable steps to safeguard the Private Information of Plaintiff and Class Members.

78.    All members of the proposed Class are readily ascertainable. Defendant has access to the names in combination with addresses and/or e-mail addresses of Class Members affected by the Data Breach. Indeed, impacted Class Members already have been preliminarily identified and sent a breach notice letter.

## CAUSES OF ACTION
### COUNT I
### NEGLIGENCE
### (On Behalf of Plaintiff and the National Class)

79.    Plaintiff restates and realleges paragraphs 1 through 78 above as if fully set forth herein.

80.    Defendant gathered and stored the Private Information of Plaintiff and Class Members as part of its business, which affects commerce.

81.    Plaintiff and Class Members entrusted Defendant with their Private Information with the understanding that the information would be safeguarded.

82.    Defendant had full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and Class Members could and would suffer if their Private Information were wrongfully disclosed.

83.    By assuming the responsibility to collect and store this data, Defendant had duties of care to use reasonable means to secure and to prevent disclosure of the information, and to safeguard the information from theft.

84.    Defendant owed a duty of care to Plaintiff and Class Members to provide

data security consistent with industry standards and other requirements discussed herein, and to ensure that their systems and networks, and the personnel responsible for them, adequately protected the Private Information.

85.     Defendant's duty to use reasonable security measures arose as a result of the special relationship that existed between Defendant, on the one hand, and Plaintiff and Class Members, on the other hand. That special relationship arose because Defendant was entrusted with their confidential Private Information.

86.     Defendant also had a duty to exercise appropriate clearinghouse practices to remove Private Information that it was no longer required to retain pursuant to regulations.

87.     Moreover, Defendant had a duty to promptly and adequately notify Plaintiff and the Class of the Data Breach, but failed to do so.

88.     Defendant had and continues to have duties to adequately disclose that Plaintiff's and Class Members' Private Information within Defendant's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiff and the Class to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their Private Information by third parties.

89.     Defendant breached its duties and thus was negligent, by failing to use reasonable measures to protect Plaintiff's and Class Members' Private Information. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

    a.  Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information;

    b.  Failing to adequately monitor the security of their networks and systems;

    c.  Allowing unauthorized access to Class Members' Private Information;

    d.  Failing to detect in a timely manner that Class Members' Private

Information had been compromised;

e.  Failing to remove Private Information it was no longer required to retain pursuant to regulations; and

f.  Failing to timely and adequately notify Class Members about the Data Breach's occurrence and scope, so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

90.  Defendant breached its duties to Plaintiff and Class Members by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Private Information.

91.  Defendant knew or should have known that its failure to implement reasonable data security measures to protect and safeguard Plaintiff's and Class Members' Private Information would cause damage to Plaintiff and the Class.

92.  The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

93.  A breach of security, unauthorized access, and resulting injury to Plaintiff and the Class was reasonably foreseeable, particularly in light of Defendant's inadequate security practices.

94.  It was foreseeable that Defendant's failure to use reasonable measures to protect Class Members' Private Information would result in injury to Class Members. Further, the breach of security was reasonably foreseeable given the known high frequency of corporate cyberattacks and data breaches.

95.  Defendant had full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and the Class could and would suffer if the Private Information were wrongfully disclosed.

96.  Plaintiff and the Class were the foreseeable and probable victims of any inadequate security practices and procedures. Defendant knew or should have known

of the inherent risks in collecting and storing Private Information, the critical importance of providing adequate security of that Private Information, and the necessity for encrypting Private Information stored on its systems.

97.    Plaintiff and the Class had no ability to protect their Private Information that was in, and possibly remains in, Defendant's possession.

98.    Defendant was in a position to protect against the harm suffered by Plaintiff and the Class as a result of the Data Breach.

99.    Defendant's duties extended to protecting Plaintiff and the Class from the risk of foreseeable criminal conduct of third parties, which have been recognized in situations where the actor's own conduct or misconduct exposes another to the risk or defeats protections put in place to guard against the risk, or where the parties are in a special relationship. *See* Restatement (Second) of Torts § 302B. Numerous courts and legislatures have also recognized the existence of a specific duty to reasonably safeguard personal information.

100.    Defendant has admitted that the Private Information of Plaintiff and the Class was wrongfully lost and disclosed to unauthorized third persons as a result of the Data Breach.

101.    But for Defendant's wrongful and negligent breaches of duties owed to Plaintiff and the Class, Plaintiff's and Class Members' Private Information would not have been compromised.

102.    There is a close causal connection between Defendant's failure to implement security measures to protect Plaintiff's and Class Members' Private Information, and the harm, or risk of imminent harm, suffered by Plaintiff and the Class. Private Information was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care by adopting, implementing, and maintaining appropriate security measures.

103.    As a direct and proximate result of Defendant's negligence, Plaintiff and

the Class have suffered and will suffer injury, including but not limited to: (i) the actual misuse of their compromised Private Information; (ii) invasion of privacy; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) an increase in spam calls, texts, and/or emails (vii) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information; (viii) future costs in terms of time, effort and money that will be expended to prevent, detect, contest, and repair the inevitable and continuing consequences of compromised Private Information for the rest of their lives; (ix) the present value of ongoing credit monitoring and identity defense services necessitated by the Data Breach; (x) the value of the unauthorized access to their Private Information permitted by Defendant; and (xi) any nominal damages that may be awarded.

104.   As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses including nominal damages.

105.   Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

106.   Defendant's negligent conduct is ongoing, in that it still possesses Plaintiff's and Class Members' Private Information in an unsafe and insecure manner.

107.   Plaintiff and Class Members are entitled to injunctive relief requiring Defendant to: (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) continue to provide adequate credit monitoring to all Class Members.

## COUNT II

### UNJUST ENRICHMENT
### (On Behalf of Plaintiff and the National Class)

108.   Plaintiff restates and realleges paragraphs 1 through 78 above as if fully set forth herein.

109.   Plaintiff and Class Members conferred a monetary benefit on Defendant. In exchange, Defendant should have provided adequate data security for Plaintiff and Class Members'.

110.   Defendant knew that Plaintiff and Class Members conferred a benefit on it in the form their Private Information. Defendant appreciated and accepted that benefit. Defendant profited from these transactions and used the Private Information of Plaintiff and Class Members for business purposes.

111.   Upon information and belief, Defendant funds its data security measures entirely from its general revenue, including payments on behalf of or for the benefit of Plaintiff and Class Members.

112.   As such, a portion of the payments made for the benefit of or on behalf of Plaintiff and Class Members is to be used to provide a reasonable level of data security, and the amount of the portion of each payment made that is allocated to data security is known to Defendant.

113.   Defendant, however, failed to secure Plaintiff and Class Members' Private Information and, therefore, did not provide adequate data security in return for the benefit Plaintiff and Class Members provided.

114.   Defendant would not be able to carry out an essential function of its regular business without the Private Information of Plaintiff and Class Members and derived revenue by using it for business purposes. Plaintiff and Class Members expected that Defendant or anyone in Defendant's position would use a portion of that revenue to fund adequate data security practices.

115.   Defendant acquired the Private Information through inequitable means in

1  that it failed to disclose the inadequate security practices previously alleged.

2      116.   If Plaintiff and Class Members knew that Defendant had not reasonably

3  secured their Private Information, they would not have allowed their Private

4  Information to be provided to Defendant.

5      117.   Defendant enriched itself by saving the costs it reasonably should have

6  expended on data security measures to secure Plaintiff and Class Members' Private

7  Information. Instead of providing a reasonable level of security that would have

8  prevented the hacking incident, Defendant instead calculated to increase its own profit

9  at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security

10 measures and diverting those funds to its own profit. Plaintiff and Class Members, on

11 the other hand, suffered as a direct and proximate result of Defendant's decision to

12 prioritize its own profits over the requisite security and the safety of their Private

13 Information.

14     118.   Under the principles of equity and good conscience, Defendant should not

15 be permitted to retain the money wrongfully obtained Plaintiff and Class Members,

16 because Defendant failed to implement appropriate data management and security

17 measures that are mandated by industry standards.

18     119.   Plaintiff and Class Members have no adequate remedy at law.

19     120.   As a direct and proximate result of Defendant's conduct, Plaintiff and

20 Class Members have suffered and will suffer injury, including but not limited to: (i)

21 invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value

22 of Private Information; (iv) lost time and opportunity costs associated with attempting

23 to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain;

24 (vi) experiencing an increase in spam calls, texts, and/or emails; (vii) nominal damages;

25 and (viii) the continued and certainly increased risk to their Private Information, which:

26 (a) remains unencrypted and available for unauthorized third parties to access and

27 abuse; and (b) remains backed up in Defendant's possession and is subject to further

28

unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

121.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

122.    Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that they unjustly received from them. In the alternative, Defendant should be compelled to refund the amounts that Plaintiff and Class Members were underpaid by Defendant.

## **PRAYER FOR RELIEF**

Plaintiff, individually and on behalf of all other members of the class, respectfully request that the Court enter judgment in Plaintiff's favor and against Defendant as follows:

A.    Certifying the Class as requested herein, designating Plaintiff as Class representative, and appointing Plaintiff's counsel as Class Counsel;

B.    Awarding Plaintiff and the Class appropriate monetary relief, including actual damages, statutory damages, punitive damages, restitution, nominal damages and disgorgement;

C.    Awarding Plaintiff and the Class equitable, injunctive, and declaratory relief, as may be appropriate. Plaintiff, on behalf of himself and the Class, seek appropriate injunctive relief designed to prevent Defendant from experiencing another data breach by adopting and implementing best data security practices to safeguard Private Information and to provide or extend credit monitoring services and similar services to protect against all types of identity theft;

D.    Awarding Plaintiff and the Class pre-judgment and post-judgment interest to the maximum extent allowable;

E.    Awarding Plaintiff and the Class reasonable attorneys' fees, costs, and

expenses, as allowable; and

     F.     Awarding Plaintiff and the Class such other favorable relief as allowable under law.

## **JURY TRIAL DEMAND**

     Plaintiff demands a trial by jury of all claims herein so triable.

Dated: January 26, 2026          Respectfully submitted,

                    */s/  Daniel Srourian*

                    Daniel Srourian, Esq. (SBN 285678)
                    **SROURIAN LAW FIRM, P.C.**
                    468 N. Camden Dr. Suite 200
                    Beverly Hills, CA 90210
                    Telephone: (213) 474-3800
                    Fax: (213) 471-4160
                    daniel@slfla.com

                    *Counsel for Plaintiff and the Proposed Class*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28